IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| ALEKSANDR SHEVTSOV, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 140196C |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

This Final Decision incorporates without change the court's Decision entered

February12, 2015. The court did not receive a request for an award of costs and disbursements

within 14 days after its Decision was entered. *See* TCR-MD 16.

Plaintiff appeals the real market value of property identified as Account R146286

(subject property) for the 2013-14 tax year. A trial was held in the Oregon Tax Courtroom on

December 15, 2014, in Salem, Oregon. Aleksandr Shevtsov appeared and testified on his own

behalf. Jeff Brown (Brown) and Brandon MacNeil (MacNeil) appeared and testified on behalf

of Defendant. Plaintiff's Exhibit 2 was admitted without objection. Plaintiff's Exhibits 2- 4, and

13 were admitted over Defendant's objection. Defendant's Exhibits A, B at 2, and D, were

admitted over Plaintiff's objection. Other exhibits exchanged by the parties prior to trial pursuant

to Tax Court Rule-Magistrate Division (TCR-MD) 10 C(1) were either not offered at trial or

excluded by the after objection based on the court's evidence exchange rules and evidentiary

rules pertaining to admissibility.

## I. STATEMENT OF FACTS

A.     *Description of the Subject Property*

On the applicable assessment date, the subject property – Tax Lot 9800 – was an

approximately one quarter acre (10,980 square feet) undeveloped flag lot purchased by Plaintiff

through a foreclosure sale on or about March 22, 2003. (Ptf's Ex 2; Def's Ex A at 5.)[1] The subject property is located behind several developed lots and one undeveloped lot. All of those lots (in front of the subject property) abut either SE 104th Avenue or SE Liebe Street. (Def's Ex B at 2.) SE 104th Avenue is paved; SE Liebe is an unimproved gravel road that bisects SE 104th Avenue.

It is Plaintiff's position that the subject property is land locked and not currently buildable. MacNeal testified on direct examination that the subject property "is buildable in [his] professional opinion," and on redirect, MacNeil testified that Plaintiff had access to the subject property (Tax Lot 9800) as of January 1, 2013, via SE 104th Avenue. Plaintiff questioned that testimony, asking MacNeil two specific questions on that point. The first question is whether MacNeil had any proof Plaintiff owned Tax Lot 9801 on January 1, 2013. Plaintiff's second question asked MacNeil why the county offered him an easement to the subject property through Tax Lot 9600, which is located on SE Liebe Street, if Defendant's office believed Plaintiff already had access to his property. As to the first question, MacNeal pointed to a "judgment" issued by a Multnomah County Circuit Court Judge in February, 2013, granting ownership of Tax Lot 9801 to the adjoining landowner Ruth Bade (Bade). That document is addressed by the court later in this Decision. As to the second question, Defendant's representative Brown testified that the county offered Plaintiff the easement through Tax Lot 9600 in an attempt to settle Plaintiff's current valuation appeal because Plaintiff was asserting he lacked access to the subject property. Brown further testified that the county either arranged for or offered Plaintiff

---

[1] Plaintiff's Exhibit 2 is a printout from "PortlandMaps," http://portlandmaps.com, and it relects Plaintiff's $13,510 purchase and indicates the sale date was "03/22/2003." Defendant states in its appraisal report that Plaintiff purchased the property on May 23, 2003, "through a Tax Foreclosure Auction." (Def's Ex A at 6.) The exact month in which Plaintiff purchased the property (March or May) is not important for purposes of resolving this appeal because Plaintiff acquired the property approximately 10 years before the applicable assessment date and the otherwise pertinent details of that purchase (primarily the price paid) are irrelevant for determining the real market value of the subject property as of January 1, 2013.

FINAL DECISION  TC-MD 140196C                                                                 2

access through Tax Lot 9600 as part of the county's sale to a nonprofit organization on May 22, 2014. Brown noted that the easement through Tax Lot 9600, which was negotiated in May 2014, was after the January 1, 2013, assessment date for the tax year at issue – 2013-14.

The subject property is zoned R5a. (Def's Ex A at 6.) "Th[at] zoning allows for one dwelling unit per 5,000 square feet * * *. The 'a' overlay is an 'Alternative Design' overlay designed to preserve existing housing and encourage new development that is compatible with residential neighborhoods." (*Id*.) Defendant's appraisal report describes the subject property's neighborhood in part as follows:

> "The subject is part of a residential neighborhood of homes of various styles and ages. The subject's neighborhood is found approximately five Miles East SE of the central business district of downtown Portland and is known locally as Lents. * * * The homes in the subject's area are generally maintained. This is an older established area where market pressure is causing 'in fill' of the last available building sites and partitioning of existing larger sites. This is causing a mixture of a majority of 40 to 80 year old housing with a minority of brand new housing."

(Def's Ex A at 5.)

Tax Lot 9801 is immediately to the east of and adjacent to the subject property. Tax Lot 9801 is an L-shaped piece of property that MacNeil testified was established after the January 1, 2013, assessment date. (*See also* Def's Ex B at 2.) The property that came to be Tax Lot 9801 was part of the subject property when Plaintiff acquired his lot (Tax Lot 9800) in 2003. (Ptf's Ex 2.) That information (regarding Tax Lot 9801) came out during Plaintiff's cross examination of Defendant's appraiser MacNeil, and is supported by Plaintiff's Exhibit 2. (Def's Ex B at 2; *see also* Ptf's Ex 2.) MacNeil testified that two of his exhibits show a "dashed line" depicting the former western boundary of Tax Lot 9801. (Def's Exs A at 13, B at 2.) MacNeil testified that Tax Lot 9801 is approximately 200 square feet in size.

MacNeil also testified that an Order issued by Multnomah County Circuit Court Judge Matarazzo on February 19, 2013, granted ownership of Tax Lot 9801 to Bade, the owner of the

property east of and adjacent to the subject property (Tax Lot 9802). Tax Lot 9802 abuts SE 104th Avenue, and was owned by Bade prior to January 1, 2013. The February 19, 2013, Multnomah County Circuit Court Order states, in part: "The Court directs a declaratory judgment establishing the right of Plaintiff, Ruth E. Bade, as owner of Tax Lots 9801 and 9802 pursuant to the land sale contract and further adverse possession thereof. The Court directs that a General Judgment further be entered quieting title to Tax Lots 9801 and 9802 in the name of Plaintiff, Ruth E. Bade." (Def's Ex D at 2.) MacNeil testified that Judge Matarazzo's February 2013 Order "suggests" that Plaintiff owned the L-shaped strip of land (Tax Lot 9801) before the Judge's Order decreed Bade the owner of that property.

B.    *Roll Value and the Parties' Value Requests*

The real market value of the subject property for the 2013-14 tax year was set by Defendant at $49,000. (Ptf's Compl at 7.) Plaintiff appealed that value to the county board of property tax appeals (board) and the board sustained the value. (*Id*.) In his Complaint to this court, Plaintiff requested a real market value of $4,500. (*Id*. at 3.) Defendant has requested that the court sustain the real market value currently on the rolls ($49,000). (Def's Ans at 1.)

C.    *Plaintiff's Exhibits*

Four of Plaintiff's exhibits were admitted into evidence. One is a printout that contains certain information about the subject property, including its property tax identification number, the owner's name, and certain sale ("deed") information. (Ptf's Ex 2.) That document indicates that Plaintiff acquired the subject property on March 22, 2013, for $13,510. (*Id*.) That purchase occurred approximately ten years before the applicable assessment date for this appeal. The parties agreed through trial testimony that Plaintiff bought the lot at a foreclosure sale. (*see also* Def's Ex A at 6.)

/ / /

FINAL DECISION  TC-MD 140196C                                                          4

Another document Plaintiff offered into evidence and admitted by the court is a deed regarding the sale of an adjoining property, Tax Lot 9600. (Ptf's Ex 13; *see also* Def's Ex B at 2.[2]) That property was sold by the county for $7,000 following foreclosure on June 5, 2014. (Ptf's Ex 13 at 1.) The deed indicated that the grantor was Multnomah County Special Programs and that the "Grantees" were Community Vision Inc. (*Id.*) The deed is signed by the then-acting chair of the Multnomah County Board of County Commissioners and reflects a sale date of June 5, 2014. (*Id.*) Page 3 of Plaintiff's Exhibit 13 is an unsigned Order of the Multnomah County Board of Commissioners authorizing a sheriff's sale of 24 tax foreclosed properties with title vesting to Multnomah County pursuant to ORS 312.270. The document indicates that the Commissioners' Order was "adopted" on March 27, 2014. (Ptf's Ex 13 at 3.) Page 4 of Exhibit 13 shows that Tax Lot 9600 (Account R146308) was one of a number of properties proposed for sheriff's sale by Multnomah County with a minimum bid set at $45,000. Brown testified that the county sold the property to the nonprofit after a "verbal bid auction" by the sheriff, with a minimum bid set at $45,000, did not result in a sale. (*See also* Ptf's Ex 13 at 4.) Brown further testified that the county sold that property to the nonprofit organization for the costs of foreclosure and recording, and that it had a relationship with that entity, having sold property to them in the past, and in some instances given that organization land at no cost. MacNeil testified that he did not consider the sale to be arm's-length and that he would not use that transaction as a comparable sale in an appraisal because of the conditions of sale (the relationship of the parties). As indicated above, the county eventually sold Tax Lot 9600 to the nonprofit organization for $7,000.

/ / /

---

[2] Defendant's Exhibit B at 2 is a plat map that shows the location of the subject property (tax lot 9800) and the adjoining tax lot 9600.

Plaintiff's other two exhibits are photographs of SE Liebe Street taken from SE 104th Avenue. (Ptf's Exs 3, 4.) Those pictures show that Liebe Street is a gravel road. (Ptf's Exs 3, 4.) Plaintiff testified that Liebe Street was a "bad street," because it lacks sufficient gravel to dissipate the water. Plaintiff introduced those photographs because he contends that his lot is landlocked, and access from SE Liebe Street through Tax Lot 9600 would be less desirable because SE Liebe is not paved. Defendant responded by testifying that the subject property had legal access off of SE 104th Avenue as of January 1, 2013, but because Plaintiff has asserted that his lot was landlocked, and there is evidence that the strip of land providing access to the subject property from SE 104th Avenue was lost through court action sometime in early 2013 (but after the January 1, 2013, assessment date), the county offered Plaintiff an easement across Tax Lot 9600, which is located on SE Liebe Street, as part of its sale of that property to the nonprofit organization so that Plaintiff would continue to have access to his property in the future.

D. *Defendant's Exhibits*

1. *Sales Comparison Approach*

Defendant submitted an appraisal report prepared by MacNeil which found a value under the sales comparison approach of $55,000. (Def's Ex A at 10.) MacNeil's value estimate was based on three sales of vacant lots located in close proximity to the subject property (0.18 miles, 1.75, and 0.38 miles from the subject property, respectively). (*Id.* at 12.) MacNeil's comparables sold on January 23, 2012 (comparable 3), December 3, 2012 (comparable 1), and March 3, 2013 (comparable 2), for $49,950 (comparable 3), $40,000 (comparable 1), and $57,350 (comparable 2).[3] (*Id.* at 12.) Comparable 1 is 0.10 acres in size, comparable 2 is 0.27 acres, and comparable 3 is 0.14 acres; the subject property is 0.25 aces. (*Id.*) After adjusting for

---

[3] The court has listed the sales prices of Defendant's three comparables chronologically according to the date of the sales to be consistent with the sentence immediately preceding the sentence with the sales prices to give an orderly account of the date and sale price of each comparable.

date of sale and lot size, MacNeil arrived at adjusted sale prices of $55,000, $54,000, and $67,000, respectively for comparables 1 through 3. (*Id*.) All three comparables have the same general zoning (R5), and comparables 2 and 3 also have the same "a" zoning overlay that the subject property has. (*Id*.) Comparables 1 and 2 are flag lots, as is the subject property. (*Id*.) Defendant gave greatest weight to its comparable 1 because of its proximity to the subject property and the fact that the sale date was approximately one month before the January 1, 2013, assessment date. (*Id*. at 10, 12.) Defendant's adjusted sale price for that property is $55,000. (*Id*. at 12.) Defendant gave its comparable 2 more weight than its comparable 3 because comparable 2 is a flag lot like the subject property, sold approximately 2 months after the assessment date, but is slightly larger than the subject property and located the farthest from the subject property (1.75 miles away compared to 0.18 miles for comparable 1 and 0.38 miles for comparable 3). (*Id*. at 10, 12.)

2.     *Cost and Income Approaches Rejected*

MacNeil considered but rejected the use of the cost and income approaches, explaining his report that "[t]he cost approach is most reliable when applied to new construction with no depreciation, improvements with minimal depreciation, and when applicable land/site sales are readily available." (*Id*. at 10.) McNeil concluded that "[f]or the subject property, an unimproved lot, this is not the case. Therefore * * * the cost approach was not developed or reported for this analysis." (*Id*.) McNeil rejected the income approach because the subject property is "an unimproved lot zoned for a single-family residential improvement, as opposed to multi-family or commercial improvements, which could offer long-term income potential." (*Id*.)

3.     *Multnomah County Circuit Court Order*

Defendant also submitted an Order signed by Multnomah County Circuit Court Judge Matarazzo, dated February 19, 2013. (Ptf's Ex D.) That Order pertains to a lawsuit between

Plaintiff and several other defendants and Bade, the owner of the lot adjacent to and immediately east of the subject property that is owned by Bade and sits on SE 104th Avenue. (*See id*.) In that Order, Judge Matarazzo ruled in favor of Bade on several claims including one quieting title in Bade and "direct[ing] a declaratory judgment establishing the right of Plaintiff, Ruth E. Bade, as the owner of Tax Lots 9801 and 9802 pursuant to the land sale contract and further adverse possession thereof." (*Id.* at 2.) That Order further "directs that a General Judgment * * * be entered quieting title to both Tax Lots 9801 and 9802 in the name of Plaintiff, Ruth E. Bade, free and clear of any interests." (*Id.*) That Order does make reference to earlier judicial action by that court regarding Tax Lot 9801, which is the L-shaped parcel that provided access to Plaintiff's property (the subject property). (*Id.*) However, none of those underlying documents related to the earlier actions of the Multnomah County Circuit Court regarding Tax Lot 9801 were admitted, or even offered into evidence, leaving the court without sufficient information to determine what if any impact those actions might have had as they pertain to Plaintiff's assertion during trial that an earlier injunction issued in 2012 precluded him from using Tax Lot 9801 to access the subject property.

## II. ANALYSIS

A. *Oregon's Valuation Laws and Burden of Proof*

The issue in this case is the real market value of the subject property as of January 1, 2013, (2013-14 tax year). ORS 308.210(1) (requiring the assessor "to assess the value of all taxable property * * * for each year as of January 1, at 1:00 a.m. of the assessment year, in the manner set forth in ORS 308.215"), ORS 308.215(1)(e) (requiring that the assessor's assessment roll include "[t]he real market value of the land"), ORS 308.205(1) (defining real market value), and ORS 308.007 (defining "assessment date," "assessment year," "tax year," and providing that

/ / /

"the assessment year beginning January 1 corresponds to the tax year beginning July 1 of the same calendar year").[4]

Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). As is relevant for this case, ORS 308.205(1) goes on to provide that real market value:

> "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue and in accordance with the following:

> "(a) The amount a typical seller would accept for the amount a typical buyer would offer that could reasonably be expected by a seller of property."

While there are three recognized methods for valuing property (sales comparison, income capitalization, and cost approaches), the sales comparison approach is most appropriate for valuing residential property.[5] *Ward v. Dept. of Revenue,* 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted); see also *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); OAR 150-308.205-(A)(2)(a).

The court looks at arm's-length sales transactions of similar property to determine a correct real market value. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

[5] An administrative rule promulgated by the Oregon Department of Revenue instructs that the three approaches to value (sales comparison, cost, and income) be considered in determining a property's value, but recognizes that all three approaches may not be applicable in a given case. Oregon Administrative Rule (OAR) 150-308.205-(A)(2). Because the subject property is owner occupied and does not generate any income, neither party used the income approach in valuing Plaintiff's property. Because land value is at issue, the typical methodology prescribed by the cost approach is not relevant.

evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). If the evidence is inconclusive or unpersuasive, Plaintiff will have failed to meet his burden of proof. *See Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). Finally, "[t]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

B.    *Plaintiff's Evidence*

It is Plaintiff's position that the subject property is landlocked and not currently buildable. The evidence shows otherwise. Plaintiff had legal access to the subject property as of January 1, 2013. His property was a flag lot on the applicable assessment date of January 1, 2013, because the Multnomah County Circuit Court judge's Order was not entered until February 2013. Therefore, based on the evidence before it, the court finds that the status of the property on the assessment date was that Plaintiff owned the tax lot that became lot 9801, which is the L-shaped strip of land providing Plaintiff access to his property. Accordingly, Plaintiff's claim that the land had a diminished value because of a lack of access is not supported by the evidence.

Plaintiff also asserted during trial that there were considerable costs involved in developing the subject property and therefore its value was less than the real market value on the assessment and tax rolls. However, Plaintiff's testimony on those points was stricken because he had no supporting evidence to substantiate his claims. Moreover, it is not enough to show that there are certain costs to be borne to develop a lot. That is only one piece of the equation. Had Plaintiff effectively established the alleged development costs, he would still have had to have shown the real market value of the property as a lot ready to build. Plaintiff failed to present any such evidence. This brings the court to what is really the fundamental problem with Plaintiff's appeal.

/ / /

Plaintiff has no valuation evidence to establish the value of the subject property. Plaintiff has the burden of proof, and without any probative evidence of the property's real market value, Plaintiff has failed to meet his burden of proof. Plaintiff introduced evidence on the sale of the adjoining Tax Lot 9600, which the county sold to a nonprofit organization – Community Vision Inc. – for $7,000 on June 5, 2014. Plaintiff introduced that sale as evidence of the value of the subject property. The evidence presented at trial persuades the court that the sale of Tax Lot 9600 was not an arm's-length transaction and that special considerations resulted in the sale of that tax lot at an amount below market value. Brown testified that the county sold the property to the nonprofit after a "verbal bid auction" by the sheriff, with a minimum bid set at $45,000, did not result in a sale. (*See also* Ptf's Ex 13 at 4.) Brown further testified that the county sold that property to the nonprofit organization for the costs of foreclosure and recording, and that it had a relationship with this entity, having sold property to them in the past, and in some instances given that organization land at no cost. MacNeil testified that he did not consider the sale to be arm's-length and that he would not use that transaction as a comparable sale in an appraisal because of the conditions of sale (the relationship of the parties). The court agrees. Plaintiff has no other valuation evidence. Accordingly, Plaintiff's appeal must be denied.

C.      *Reconciliation*

The court does have the statutory authority under ORS 305.412 to determine the real market value "on the basis of the evidence before [it], without regard to the values pleaded by the parties." The valuation evidence in this case, Defendant's appraisal, tends to support the current roll value and Defendant has only requested that the court sustain that value, which is $49,000.

III.  CONCLUSION

The court has considered the documentary evidence and testimony presented at trial and concludes that Plaintiff has failed to establish by a preponderance of the evidence that the real

market value on the assessment and tax rolls for the subject property, Account R146286, as of January 1, 2013, was in error. Defendant's evidence supports the current real market value on the rolls. The court therefore concludes that the real market value of the subject property as of January 1, 2013, was $49,000. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of Account R146286 was $49,000 for the 2013-14 tax year.

IT IS FURTHER DECIDED that Plaintiff's appeal is denied.

Dated this ____ day of March 2015.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was signed by Magistrate Dan Robinson on March 2, 2015. The court filed and entered this document on March 2, 2015.*